John G. McCullough *vs.* Julius Hellweg, trading as August Hellweg.

*Bill of Lading—Termination of Voyage—Delivery of Cargo—Usage—Freight—When demandable—Lien for Freight—Replevin—Tender.*

Where by the terms of a bill of lading signed by the master of a vessel, the cargo is to be delivered at a certain wharf, the mere arrival of the vessel at the wharf is not a full compliance with the contract, and the voyage is not terminated until the goods have been delivered at the wharf specified.

A bill of lading for a cargo of wood provided that the cargo was to be delivered at the wharf of the owner of the cargo, in the City of Baltimore.  Held:

1st. That the parties were presumed to have contracted with reference to a custom proved to exist in the Port of Baltimore, requir-. ing a cargo of wood to be unloaded on the wharf of the owner of the cargo, and piled in suitable form for measurement and inspection, before freight can be demanded.

2nd. That no lien for freight accrued to the owner of the vessel, before a delivery of the cargo on the wharf of the owner of the cargo.

3rd. That the owner of the vessel having discharged the cargo at another wharf, he had no such special property therein, by reason of the non-payment of freight, as would defeat an action of replevin for the cargo brought by its owner.

After the institution of such action of replevin, the plaintiff offered the defendant a certain sum for freight, and on his refusal to accept it paid it into Court.  Held:

1st. That this offer was in no technical sense a tender, and did not estop the plaintiff from subsequently denying that there was a lien on the cargo.

2nd. That as the amount due for freight had no reference to the issue in the case, which was the right of property in the cargo replevied,

McCullough *vs.* Hellweg.

and damages for its detention, the procedure in relation to the offer was irregular and not sanctioned by any judicial precedent; and when the defendant refused to accept the sum offered, the Court was clearly right in allowing· it to be withdrawn by the plaintiff.

A tender must have reference to the issue in the cause.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First Exception.*—This exception was taken to the permission given by the Court to the plaintiff to withdraw the sum of $79.50, which he had paid into Court, upon the defendant's refusal to accept the same as payment for freight.

*Second Exception.*—The defendant offered the following prayers:

1. If the jury find from the evidence that the· defendant sent the vessel, the Aletheia, the same that is named in the bill of lading produced at this trial, to the shore of A. Edelin, on the Chesapeake Bay, to load with a cargo of wood for him, the defendant, and that the said Edelin, by himself or his agent, promised to load the said vessel with wood for the defendant, but that when she arrived at her destination the said Edelin refused to load for the defendant, but did load her with a partial cargo for Hellweg, the plaintiff in this case, and that the said vessel after having received the said partial cargo, returned to Baltimore and went to the wharf where the said Hellweg did business, and that she was then and there ready to discharge the wood she had on board, in conformity with the terms of the bill of lading, provided the owner of the said wood would pay to the defendant what was a reasonable rate for the use of his said vessel, but that the said Hellweg refused to pay the rate demanded, and did not offer to pay any other rate, that then the defendant had a right to retain the said wood on

board the vessel, or to put it in such other place as is. usual for the discharge of such cargoes, in order to secure and preserve his lien for the use of his said vessel, and that while he was engaged in putting it upon his wharf the said Hellweg issued the replevin writ in this case, without having paid or tendered to pay what was reasonable freight for the use of the said vessel; and shall further find that when the defendant sent his said vessel to the shore of the said Edelin, he did not authorize the captain of the said vessel to charter her to any other person, or for any other purpose than to bring a load of wood to Baltimore for him, the defendant, and that the plaintiff, or the agent of the plaintiff, employed the said captain to bring wood to Baltimore for the plaintiff, the rate of freight to be fixed in Baltimore by the defendant, and that the said captain reported to the defendant, when he came to Baltimore, those facts, and that the defendant fixed the rate of freight, and directed the captain to demand the rate fixed, and that the captain did so demand according to direction, and that when he made such demand the said vessel was lying at the wharf where Hellweg, the plaintiff, carried on business, and that he was ready to discharge his cargo on the payment of said freight, but that Hellweg peremptorily refused to pay, and that then, and not until then, the vessel was taken around to the wharf of the defendant, where she proceeded to land the said wood, and was in the act of landing it when the said replevin was issued, that then the verdict should be for the defendant.

2. If the jury find from the evidence that the wood in question was brought to Baltimore by the schooner Aletheia, and that while she was lying at the wharf of Hellweg, the captain demanded freight at the rate of two dollars per cord, and that the said payment of freight was refused by Hellweg, and that neither that amount nor any other rate was offered or tendered to the captain or owner, then the verdict should be for the defendant.

3. If the jury find that no rate of freight was fixed by the shipper and captain at the place of shipment, nor at the port of discharge by the same parties, and that the shipper refused to pay the freight demanded by the owner, and that he, the owner, offered to deliver the cargo if the freight were paid, then his retaining the cargo was not wrongful if retained until the freight was settled or paid.

The Court (PHELPS, J.,) refused the foregoing prayers and gave the following instruction :

If the jury find the bill of lading offered in evidence, it was the duty of the master to unload the cargo on the wharf of the plaintiff, and until this duty was performed the vessel's lien upon the cargo for the freight was only inchoate and conditional, and if the jury find that after the arrival of the vessel at the plaintiff's wharf and before the cargo was so unloaded, the vessel was, without notice to the plaintiff, removed to a distant wharf of the defendant for the purpose of being there unloaded, then the. defendant had no such special property in the wood as to defeat this action, and the plaintiff is entitled to a verdict, and to recover such actual damage as the jury may find from the evidence he has sustained in consequence of such removal.

The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*W. H. Cowan*, for the appellant.

*James W. Denny*, for the appellee.

YELLOTT, J., delivered the opinion of the Court.

The appellee, who was the plaintiff below, purchased of Albert Edelin in St. Mary's County, fifty-three cords of

fire-wood, and shipped it on board a vessel belonging to the appellant. By the terms of the contract, as shown by the bill of lading, this cargo was to be delivered in Baltimore, at Hellweg's wharf, to the appellee or his assigns. The bill of lading did not determine the amount for freight to be paid, and after the arrival of the vessel at the said wharf, and the unloading of about one cord and one-half cord of the wood, the captain was directed by the appellant to carry the cargo to McCullough's wharf, which is about four miles distant from the point of delivery agreed upon in the said bill of lading. The appellee brought an action of replevin for the wood, and obtained a judgment for the property replevied, and damages for its detention; and from that judgment an appeal has been taken.

There is evidence in this record tending to show that although the amount for freight was not specified in the bill of lading, it was agreed between the captain of the vessel and the appellee, that the charge for freight should be $1.50 per cord. It was also shown by the testimony of a number of witnesses, who are large dealers in wood, "that there has been, and now is, a well known custom existing in the port of Baltimore, that the master of a vessel shall first unload his cargo of wood upon the wharf of the owner of the cargo, and pile the same in a suitable form for measurement and inspection; that it is then measured and the freight ascertained according to the measurement, and that freight is not demandable before the cargo is landed on the wharf." It was also shown that the sum of one dollar and a half per cord was a fair rate for the freight, and that the plaintiff was then and there always ready to pay that amount, and did afterward pay it into Court upon the refusal of the defendant to receive it.

There is no evidence tending to contradict the testimony in relation to the existence of the aforesaid custom in the port of Baltimore. As has been already stated the appel-

lee introduced evidence tending to show that the sum of $1.50 was a reasonable rate for freight; and the captain of the vessel testifies that, authorized by the appellant, he told the appellee that the charge would be $2.00 per cord; and the proof shows that, in consequence of the refusal of the latter to pay this charge, the cargo was carried to Mc-Cullough's wharf, where it was subsequently taken by the sheriff under the writ of replevin.

As a defence to this action of replevin the appellant contended that he had a lien on the cargo for freight, and could therefore hold possession until the charges for freight were paid. His right to hold possession under an existing lien cannot be controverted, but the very existence of this lien is the vital question in the case. It is apparent that unless he had placed himself in a position to make a demand for freight there could be no lien for money due for freight. It has been decided in a number of cases that no freight is earned unless the contract to safely deliver the cargo has been complied with, and that the master of the vessel is the agent of its owner authorized to enter into such contract. *Ferguson vs. Cappeau,* 6 *H. & J.,* 399; *Wirgman's Adm'r vs. Mactier,* 1 *G. & J.,* 150.

By the terms of the contract, signed by the master of the vessel, the cargo was to be delivered in good order at the wharf of the appellee. The mere arrival of the vessel at the wharf was not a full compliance with the obligations of the contract. Even while the vessel lay at the wharf unloaded the cargo was subject to the exercise of the vendor's right of stoppage *in transitu. James vs. Griffin,* 2 *Mee. & W.,* 624; *Tucker vs. Humphrey,* 4 *Bing.,* 516.

Not until the goods had been delivered at the wharf, was there a termination of the voyage by a compliance with the terms of the contract as expressed in the bill of lading.

This question was carefully considered and determined by the Supreme Court of the United States in the case of *Mordecai vs. Lindsay, Law. Ed. B.* 18, 486 ; *Same case,* 5 *Wall.,* 481.    Speaking of the right of the ship-owner to retain the goods until the charge for freight is paid, Mr. Justice CLIFFORD says: "His right to do so is beyond doubt, but he cannot detain the goods on board the ship until the freight is paid, as the consignee or owner of the cargo would then have no opportunity of examining their condition.    *    *    *    *    Delivery on the wharf in the case of goods transported by ships is sufficient under our law, if due notice be given to the consignees and the different consignments be properly separated, so as to be open to inspection and conveniently accessible to their respective owners."

The uncontradicted testimony of a number of witnesses, who were examined in the Court below, proved the existence of a custom in the port of Baltimore, requiring a cargo of wood to be unloaded on the wharf of the owner of such cargo, in suitable form for measurement and inspection, before freight can be demanded.    When there is an established usage or custom in regard to certain transactions, parties to such transactions are presumed to have contracted with reference to such usage or custom, in the absence of any special agreement to the contrary.    There is no proof of any such special agreement between these parties.    So far from this, by the terms of the bill of lading the cargo was to be delivered at the wharf of the appellee.    It therefore follows that the appellant, not having complied with the obligations of his contract, the learned Judge in the Court below properly instructed the jury that the defendant had no such special property in the wood as would defeat the action, and that the plaintiff was entitled to recover.    The granting of this instruction necessarily involved the rejection of the three prayers offered by the defendant, all of

which are founded on the assumption of the existence of a lien on the property for freight due and demandable.

It appears from the record that during the trial in this action of replevin, instituted for the recovery of the cargo of wood, the plaintiff offered the defendant $79.50 as payment for freight at $1.50 per cord. This offer was refused by the defendant and the plaintiff then paid the money into Court. The defendant still refusing to receive the money, the plaintiff was allowed to withdraw it, and the defendant has excepted to this ruling of the Court.

The defendant contends that this offer was such a tender as estopped the plaintiff from subsequently denying that there was a lien on the cargo. But the proper construction to be put on this offer of the plaintiff is that it was, in no technical sense, a tender but simply an effort to compromise a matter not really involved in the pending controversy. A tender must have relation to the issue in the cause. In an action *ex contractu* the defendant may tender the amount he believes to be due, and the tender operates as an estoppel so that he cannot subsequently deny that the amount tendered is due. It may also relieve him from the payment of costs if no greater sum is recovered by the plaintiff. *Bennett vs. Francis,* 2 *Bos. & Pul.,* 550; *Columbia Build. Asso. vs. Crump,* 42 *Md.,* 192.

But the offer made by the plaintiff had no reference to the issue then to be determined, which was the right of property in the cargo taken under the writ of replevin and damages for its detention. It was an offer to adjust and settle another matter, not then involved in the issue on trial, and which could not then and there be determined by the Court and jury. Indeed the whole procedure in relation to this offer was manifestly irregular and not sanctioned by any precedent established by adjudication; and when the defendant refused to accept the sum offered, the learned Judge who sat in the Court below was clearly right in allowing it to be withdrawn by the plaintiff.

There being no error in any of the rulings of the Court below the judgment must be affirmed.

*Judgment affirmed.*