Gwen CLARK, Appellant,

v.

Paul C. MOLER, Appellee.

No. 79–37.

District of Columbia Court of Appeals.

Argued Jan. 9, 1980.

Decided Aug. 8, 1980.

1040

Lawrence E. Williams, Jr., Washington, D.C., for appellant.

Robert Cadeaux, Washington, D.C., for appellee.

Before KELLY, NEBEKER and FERREN, Associate Judges.

NEBEKER, Associate Judge:

The substituted party–appellant in this case,[1] Gwen Clark, appeals from an order denying a Motion to Vacate or Set Aside a Default Judgment. Super.Ct.Civ.R. 60(b). We conclude that the particular circumstances of this case show an abuse of trial court discretion in denying the motion. The order is reversed.

I

On May 29, 1973, an automobile owned by Mrs. Lewis and driven by her codefendant, Franklin R. Douglas,[2] failed to stop for a

1. Esther E. Lewis, who noted the appeal, died during its pendency.

2. Although the record shows that Mr. Douglas remained and worked in the District for a period of time following the incident, he was never

red traffic light and struck several Metropolitan Police Officers crossing the intersection on motorcycles. The appellee, Officer Paul C. Moler, sustained severe bodily injuries in the accident. On October 30, 1974, Mrs. Lewis was served with a complaint sounding in negligence and requesting damages of $500,000. Within the 20–day time limitation for filing an answer, she took the complaint to an attorney. However, a timely answer was not filed. A default was entered by the Clerk on November 22, 1974 and Mrs. Lewis was notified. *See* Super.Ct. Civ.R. 55(a).[3]

On December 2, 1974, Mrs. Lewis' attorney attempted to file an answer to the complaint. The Clerk of the Court rejected this answer on December 16, and a letter was sent to him stating that he could draw up a consent praecipe whereby all parties to the action agree to the vacating of the default or he could file a Motion to Vacate the Default accompanied by a Verified Answer pursuant to Super.Ct.Civ.R. 55(c).[4] No further action was taken and the case lay "dormant" until October 17, 1977, when, according to the court docket sheet, notice was sent that an ex parte hearing on proof of damages would be held pursuant to Super.Ct.Civ.R. 55–II(a). It is not evident in the record to whom this notice was sent. On December 20, 1977, the court entered a judgment against Mrs. Lewis awarding Mr. Moler $60,000 in damages. Notice of the judgment was sent to Mrs. Lewis. She then contacted the Neighborhood Legal Services and a Motion to Vacate a Default Judgment pursuant to Super.Ct.Civ.R. 60(b) was filed on her behalf on February 22,

1978.[5] This motion was denied November 3, 1978, and a subsequent stay of execution was granted pending appeal.[6] While this case was pending on appeal, Mrs. Lewis died. Gwen Clark's motion for substitution as party–appellant was granted on May 19, 1980.

## II

Setting aside a default judgment is committed to the sound discretion of the trial court. *Dunn v. Profitt*, D.C.App., 408 A.2d 991, 993 (1979). However, since "courts universally favor a trial on the merits," "even a slight abuse of discretion in refusing to set aside a judgment may justify reversal." *Jones v. Hunt*, D.C.App., 298 A.2d 220, 221 (1972).

Under Super.Ct.Civ.R. 60(b)(1), relief may be granted upon a motion made within one year of entry of the judgment for "mistake, inadvertence, surprise, or excusable neglect." In addition, when the circumstances alleged go beyond those encompassed in the other sections of the rule, subsection (b)(6) provides a residual clause of "any other reason justifying relief from the operation of the judgment" which is not limited by time. However, subsections (b)(1) and (b)(6) are mutually exclusive. *Ohio Valley Construction Co. v. Dew*, D.C. App., 354 A.2d 518, 521 n.6 (1976).

Since the actual entry of the default judgment was over three years after the entry of default, there has been confusion as to whether the appellant's motion was made within the one–year time limitation of subsection (b)(1). We conclude that

served with his summons and has not been located.

3. Super.Ct.Civ.R. 55(a) allows for an entry of default by the Clerk when the party against whom a judgment for affirmative relief sought has failed to plead or otherwise defend as provided.

4. Super.Ct.Civ.R. 55(c) allows a default to be set aside for "good cause shown, and upon the filing of a verified answer setting up a defense sufficient if proved to bar the claim in whole or in part . . . ."

5. Super.Ct.Civ.R. 60(b) states in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment. . . .

6. Mrs. Lewis is also defendant to a separate civil action, No. 12158–78, entitled Judgment Creditor's Bill, brought by Mr. Moler, which will cause her home to be sold to satisfy this judgment.

the motion was within the one–year time limitation since it was made 60 days after the entry of the judgment. A default entered by the Clerk pursuant to Super.Ct. Civ.R. 55(a) is distinct from a default judgment entered pursuant to Super.Ct.Civ.R. 55(b)(2) and must be treated separately. *See United States v. Topeka Livestock Auction, Inc.*, 392 F.Supp. 944, 950 (N.D.Ind. 1975) (interpreting the Federal Rules of Civil Procedure which are essentially identical to our Superior Court Rules). Super.Ct. Civ.R. 60(b) applies to *judgments;* whereas the setting aside of a mere default is controlled by Super.Ct.Civ.R. 55(c). Having concluded that the motion to vacate the judgment was within the one–year time limitation encompassed by Super.Ct.Civ.R. 60(b)(1), the question then becomes whether the trial court abused its discretion in denying such motion.

Mrs. Lewis has alleged in her motion that because of the gross negligence of her attorney in attending to her cause and his assurances to her that the matter was being taken care of, her failure to timely answer the original complaint or to move promptly to vacate the subsequent default should be considered excusable neglect under the criteria of the rule. However, the trial court ruled that it could not find "that she was relying on any counsel at the time of the entry of the default" and that she had "full knowledge of the default over three years ago."

■ A letter from the attorney to Mrs. Lewis, dated November 27, 1974, attests to his knowledge of the Moler law suit and that the complaint must be answered. It is unquestioned that he attempted to file an answer on Mrs. Lewis' behalf ten days after the entry of the default. In addition, Mrs. Lewis presented evidence of a Money Order receipt stub indicating a payment of $50.00 to the attorney on December 5, 1974, three days after the attempt to file the answer. We reject appellee's contention that in absence of proof of the payment of a proper retainer fee, it cannot be said that an attorney–client relationship was created in this case. Certainly, when the Clerk of the

Court rejected the untimely answer, returned it and advised of the proper procedures for vacating the default, there was no doubt the attorney had represented to the court that he was counsel for Mrs. Lewis in this case. We conclude that in view of these uncontroverted facts, the trial court's finding that Mrs. Lewis did not rely on counsel is unsupported in the record and consequently clearly erroneous.

■ The question then becomes whether counsel's negligence in attending to her interests should be imputed to her. *See Railway Express Agency, Inc. v. Hill*, D.C.App., 250 A.2d 923, 926 (1969). Mrs. Lewis took the papers served upon her to counsel. He interviewed her as to the circumstances of the case and told her he would take care of it. She also gave him her insurance policies for investigation as to whether this action would be covered under any of her policies. Despite the Clerk's rejection of the untimely answer and a letter notice of the appropriate steps to be taken to set aside the default, the attorney took no further action on the case. We think the facts present an exceptional circumstance where an attorney has violated "his implicit duty to devote reasonable efforts in representing his client," and as such his negligence should not be imputed to his client. *Id. See Citizens Building & Loan Association of Montgomery County v. Shepard*, D.C.App., 289 A.2d 620 (1972).

■ "When the conduct of counsel is not imputed to the client, we look to the conduct of the client himself for purposes of applying rules such as [Super.Ct.Civ.R.] 60(b)." *Railway Express Agency, Inc. v. Hill, supra.* Mrs. Lewis alleged that she was assured that everything related to the complaint was taken care of. She was an unsophisticated client of limited means and was caught up in a law suit not of her own making by the doctrine of vicarious liability. She talked with her attorney after the entry of the default concerning related insurance matters and was not alerted that he had not take care of the matter. *Cf. Bond v. Wilson*, D.C.App., 398 A.2d 21 (1979) (plaintiff's lack of diligence in prod-

ding neglectful counsel did not constitute excusable neglect). She had no reason to suspect that this case was not settled until more than three years after the entry of the default. Upon learning of the judgment and that the matter had not been taken care of as she thought, she immediately contacted new counsel. A Motion to Set Aside the Default Judgment was filed within sixty days of notice to Mrs. Lewis. We hold that Mrs. Lewis' behavior in these circumstances does not amount to negligence on her part. Such circumstances can warrant excusable neglect under Super.Ct. Civ.R. 60(b)(1), and in fact, may be so egregious as to constitute relief under Super.Ct. Civ.R. 60(b)(6). *See Citizens Building & Loan Association of Montgomery County v. Shepard, supra; Railway Express Agency, Inc. v. Hill, supra.*

Although we have concluded that Mrs. Lewis' motion can qualify under the criteria of Super.Ct.Civ.R. 60(b)(1), the decision of whether to grant the motion is equitable in nature and other factors must be considered. Relevant are whether the movant: (1) received actual notice of the proceeding; (2) acted in good faith; (3) presented a prima facie adequate defense; and (4) acted promptly upon discovery of the judgment. Also considered is whether the non–moving party would be prejudiced by the setting aside of the judgment. *Dunn v. Profitt, supra.* Without a doubt, Mrs. Lewis did receive notice of the law suit. Her good faith in attempting to resolve this matter is demonstrated in that upon receiving the complaint and learning of the judgment, she acted as promptly as possible in trying to find an attorney who would represent her.

A different problem is raised concerning the trial court's legal conclusion in this case that Mrs. Lewis had not shown that she was "likely to succeed" on the merits of the case and consequently vacating the default was not justified. Appellant argues that since there is a judicial policy favoring a trial on the merits, only a prima facie defense need be established by the movant. We conclude that the trial

court may require the movant to disclose the underlying facts supporting an allegation asserted in defense of a claim. *See Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.,* 383 F.2d 249 (4th Cir. 1967). But we cannot agree that the movant must make a showing as strong as that of "likely to succeed." What is required is a meritorious defense, something more than a bald allegation, but certainly something less than a pretrial hearing on the merits. *See In re Stone,* 588 F.2d 1316, 1319 (10th Cir. 1978). Mrs. Lewis alleged that her codefendant, the driver of the car, was living with her, but did not have permission to drive her car; that in fact, he took the keys to her car out of her pocketbook. If proven, such a defense would bar her vicarious liability in this suit. *See Miller v. Imperial Insurance Incorporated,* D.C.App., 189 A.2d 359 (1963). Evidence contrary to this position was taken at the hearing which amounted to an insurance application listing her codefendant as a driver of the automobile; however, Mrs. Lewis contested that this information was inappropriate for the coverage on that particular car. These are matters that go to the ultimate resolution of the case and are appropriate for a trial, not a hearing on a motion for vacating a default judgment.

Finally, the appellee alleges that the prejudice he will suffer in this case will be the difficulty in proving his case when memories have faded. *See Union Storage Co., Inc. v. Knight,* D.C.App., 400 A.2d 316 (1979). We agree that in usual circumstances this factor would probably control the inquiry. However, here the appellee must be charged with some of the lapse of time due to his failure to proceed to judgment for over three years. It was the plaintiff that had been dilatory in pursuing the prosecution of the suit. The standard of diligence required of plaintiffs is higher than that of defendants. *See Railway Express Agency, Inc. v. Hill, supra. See also Erick Rios Bridoux v. Eastern Air Lines,* 93 U.S.App.D.C. 369, 214 F.2d 207, *cert. denied,* 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1954). These factors taken together with

the trial court's erroneous findings and conclusions of law constitute an abuse of trial court discretion requiring reversal.

*Reversed.*